**KELLER ROHRBACK L.L.P.**
Ryan McDevitt (P84389)
1201 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
Tel:     (206) 623-1900
rmcdevitt@kellerrouhrback.com

**WITTELS MCINTURFF PALIKOVIC**
Ethan D. Roman
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Tel:     (914)-775-8862
edr@wittelslaw.com

**THE LONG LAW FIRM, PLLC**
James Austin Long
120 E. WASHINGTON STREET, SUITE 928
SYRACUSE, NEW YORK 13202
Tel:     (315)-991-8000
jlong@long.law

*Co-Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **SHARON HAMILTON,** On Behalf of Herself and All Others Similarly Situated, <br><br> **Plaintiff,** <br><br> v. <br><br> **MINDVALLEY INC.,** <br><br> **Defendant.** | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Sharon Hamilton ("Ms. Hamilton" or "Plaintiff"), by her undersigned attorneys,

Keller Rohrback L.L.P., Wittels McInturff Palikovic, and the Long Law Firm, PLLC, brings this

consumer protection action in her individual capacity and on behalf of a class of consumers defined

below against Defendant Mindvalley Inc. (hereafter, "Defendant" or "Mindvalley") and hereby alleges the following with knowledge as to her own acts and upon information and belief as to all other acts:

## **INTRODUCTION**

1.      This is a proposed class action lawsuit challenging Mindvalley's use of unconscionable, unfair, and deceptive "automatic renewal" tactics to trick consumers into paying for unwanted, pricey subscriptions for wellness and self-help programs. Mindvalley intentionally misleads consumers into thinking that a subscription to a Mindvalley offering lasts only for a discrete period. The truth, however, is that Mindvalley hides inadequate "disclosures" that its subscription instead automatically renews. Mindvalley hides and/or misrepresents the material facts about its offerings both before and after consumers purchase a subscription, and any disclosures it provides are either themselves misleading, or fail to cure the omission of material facts regarding its subscriptions. Mindvalley also intentionally makes its subscriptions difficult to cancel and misleads consumers regarding its "risk-free" refund guarantee.

2.      Worse, Mindvalley unilaterally and without authorization reactivates subscriptions after they have been cancelled and charges consumers for those reactivated subscriptions.

3.      Mindvalley offers a suite of online products and services that purport to help consumers achieve personal growth. Mindvalley calls itself "the world's most effective transformation platform" and promises "a better you every day."

4.      As more and more commerce is conducted online, many firms boost profits by enrolling customers into automatically renewing subscriptions.

5.     Knowing that "[b]ecause subscriptions are automatically renewed, consumers who are inertial or not fully attentive may continue to pay for services they no longer value[,]"[1] some companies—including Mindvalley—use unfair, unconscionable, and deceptive practices in providing goods and services. For Mindvalley, this includes inadequate disclosure of recurring charges before and after purchase, an obstructive cancellation process, and "risk-free" trials that are hard to cancel and if cancelled, the refund is not honored—to lure customers into paying for subscriptions they do not actually want.

6.     The Michigan Consumer Protection Act, Mich. Comp. Laws ("M.C.L.") §§ 445.901 et seq. ("MCPA") was designed to combat the increasingly widespread practice of businesses defrauding consumers.[2]

7.     The MCPA bans "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" M.C.L. § 445.903(1). Such practices are unlawful. *Id.*

8.     The MCPA enumerates specific methods, acts, or practices as unfair, unconscionable, or deceptive, including:

   a.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have. *Id.* § 445.903(1)(c);

   b.   Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented. *Id.* § 445.903(1)(g);

   c.   Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known to the consumer. *Id.* § 445.903(1)(s);

---

[1] Liran Einav, Benjamin Klopack & Neale Mahoney, *Selling Subscriptions*, Nat'l Bureau of Econ. Research (NBER), Working Paper No. 31547 (Aug. 2023), https://www.nber.org/papers/w31547.

[2] *See Forton v. Laszar*, 239 Mich. App. 711 (2000) ("The MCPA is a remedial statute designed to prohibit unfair practices in trade or commerce and must be liberally construed to achieve its intended goals. . . .[T]he clear legislative intent of the MCPA is to protect consumers in the purchase of goods and services.").

    d.   Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is. *Id.* § 445.903(1)(bb); and

    e.   Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner. *Id.* § 445.903(1)(cc).

9.    Mindvalley engages in numerous unfair, unconscionable, and deceptive tactics barred by the MCPA and the common law.

10.    ***First***, Mindvalley omits material facts regarding the automatically renewing nature of its subscriptions. Mindvalley does this before customers purchase a Mindvalley offering, and continues post-enrollment. Nor does Mindvalley obtain customers' affirmative consent prior to enrolling consumers in its automatically renewing subscriptions.

11.    ***Second***, Mindvalley makes canceling a subscription exceedingly difficult. Although Mindvalley tells prospective customers that they can cancel with "one click," in reality consumers must navigate—with no help from Mindvalley—a lengthy and confusing process of at least nine steps across at least five screens. This process deliberately obstructs efforts by consumers to cancel their subscriptions, leaving consumers trapped in a Mindvalley subscription with the resulting renewal charges.

12.    ***Third***, even for those users do manage to successfully navigate Mindvalley's byzantine cancellation process, Mindvalley engages in a practice of unilaterally reactivating cancelled accounts and resuming billing.

13.    All Mindvalley customers face this same gantlet and need only be tricked by one of Mindvalley's traps to end up paying a hefty fee for an illegal subscription. And even then, Mindvalley often charges them again anyway.

14.    It is not happenstance that so many of Mindvalley's customers are paying for illegal subscriptions. This outcome is the desired result of Mindvalley's intentional and bad-faith design

choices. Mindvalley knows its scheme is tricking customers as hundreds of consumers have complained directly to Mindvalley or via sites like Trustpilot, SiteJabber, and Reddit. Upon information and belief, Mindvalley experiences a high rate of chargebacks from consumers disputing unwanted charges caused by Mindvalley's subscription scheme, and it has developed customer service protocols specifically to deal with these complaints.

15.     Despite the clear messages Mindvalley's customers are sending, Defendant continues to subject consumers to its unconscionable, unfair, and deceptive subscription scheme and to reap significant monetary benefits from its misconduct.

16.     Only through a class action can consumers like Plaintiff remedy Mindvalley's unlawful practices. Because the monetary damages suffered by each customer are small in comparison to the much higher cost a single customer would incur in trying to challenge Mindvalley's improper conduct, it makes no financial sense for an individual customer to bring his or her own lawsuit. Furthermore, many customers do not realize they are victims of Mindvalley's unlawful acts and continue to be charged to this day. With this class action, Plaintiff and the Class seek to level the playing field, enjoin Mindvalley's unlawful business practices, and recover the charges Mindvalley has imposed on them in violation of the law.

## JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over Mindvalley because Mindvalley conducts substantial business in Michigan, has sufficient minimum contacts with Michigan, and otherwise purposely avails itself of the privileges of conducting business in Michigan by marketing and selling products and services in Michigan. Further, the injuries to Michigan consumers that Plaintiff seeks to prevent through public injunctive relief arise directly from Mindvalley's

continuing conduct in Michigan, including, but not limited to, directing its subscription practices at Michigan consumers.

18.     This Court has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Mindvalley.

19.     This Court has original subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act. However, if the Court determines that it lacks original jurisdiction over any claim in this action, it may exercise supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. § 1367 because all of the claims arise from a common nucleus of operative facts and are such that Plaintiff ordinarily would expect to try them in one judicial proceeding.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Substantial acts in furtherance of the alleged improper conduct occurred within this District, as Plaintiff resides in this District, and Mindvalley resides in this District for venue purposes. *See* 28 U.S.C. § 1391(c)(2).

## **PARTIES**

21.     Plaintiff Sharon Hamilton is a citizen of Michigan living in Burton, Michigan. She was enrolled in a Mindvalley subscription on or around September 22, 2022, again on or around May 30, 2025, and again on or around August 23, 2025.

22.     Defendant Mindvalley Inc. is a Delaware corporation with its principal place of business in Kuala Lumpur, Malaysia. Mindvalley offers online courses in a variety of areas loosely centered on wellness and personal growth. Representative courses include:

- The "Silva Ultramind System," taught by Mindvalley's Founder and CEO, Vishen Lakhiani, who promises consumers will "[l]earn to naturally access alpha, theta, and delta brainwave states to channel your mind's full creative potential";[3]

- "The Art of Manifesting," which promises "breakthroughs" such as "being able to create visions so clear and powerful, they become inevitable," and "[k]nowing how to bend the fabric of time and space to your desires";[4] and

- "Quantum Jumping," which claims to teach consumers to "enter the alpha level of mind: where you visualize yourself soaring through the multiverse, and meeting alternate versions of you" and "traveling through time, and meeting yourself in past lives."[5]

## FACTUAL ALLEGATIONS

### A.   Background on the Subscription e-Commerce Industry.

23.     The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[6] The sector "has exploded in recent years, by one estimate growing by over 400% over the past decade," such that "subscription revenue is expected to reach $1.5 trillion" in 2025.[7]

24.     Though it provides convenience to some consumers, there are well-documented downsides associated with the subscription-based business model. In particular, retailers may realize far more profit by locking consumers into recurring subscriptions than by working to improve their products or focusing only on charging consumers for products they actually want. One paper "estimates that inattention and more passive renewal lead to a substantial increase in

---

[3] https://home.mindvalley.com/quests/en/ultramind.

[4] https://home.mindvalley.com/quests/en/manifesting.

[5] https://home.mindvalley.com/quests/en/quantum.

[6] *See* Sam Saltis, *How to Run an eCommerce Subscription Service: The Ultimate Guide*, CORE DNA, https://www.coredna.com/blogs/ecommerce-subscription-services.

[7] Emily Stewart, *Companies Love Trapping People in Subscriptions. Savvy Consumers Are Fighting Back.*, Business Insider (July 24, 2025), https://www.businessinsider.com/free-trials-consumers-subscription-economy-2025-7.

revenues for subscription services, which could be as high as ***three times greater*** than the revenues they would receive if subscribers were fully attentive and made an active renewal decision each month."[8]

25.     Recognizing the profitability of recurring subscriptions, many companies utilize deceptive sign-up processes designed to lure consumers into enrollment, and misleading cancellation processes designed to prevent them from canceling or, as here, securing refunds. As one recent report observed, "[c]ompanies have gotten increasingly savvy at trapping consumers in what are known as 'dark patterns,' drawing them in with a shiny new product or discounted subscription that ends up being burdensome to get out of."[9]

26.     The term "dark patterns," first coined in 2010 by the cognitive scientist Harry Brignull, is a term of art in user-experience ("UX") design, referring to interface strategies intentionally crafted to manipulate consumer choice. The Federal Trade Commission defines them as "practices that trick or manipulate users into making choices they would not otherwise have made and that may cause harm."[10] A report by Nielsen Norman Group, a globally recognized UX consultancy, defines a dark pattern as "a design pattern that prompts the user to take an action that benefits the company employing the pattern by deceiving, misdirecting, shaming, or obstructing the user's ability to make another (less profitable) choice."[11]

---

[8] *See* Einav et al., *supra* note 1, at 17 (emphasis added).

[9] Ayelet Sheffey, *America's Nightmare of Never-Ending Subscriptions*, Business Insider (Oct. 19, 2024),     https://www.businessinsider.com/america-subscriptions-nightmare-recurring-payments-cancellation-company-tricks-trap-customers-2024-10?utm_source=chatgpt.com

[10] Fed. Trade Comm'n, *Shedding Light on Dark Patterns: An FTC Report on How Manipulative Design Is Used Against Consumers*, at 1 (Sept. 14, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800+Dark+Patterns+Report+9.14.2022++FINAL.pdf

[11] Maria Rosala, *Deceptive Patterns in UX: How to Recognize and Avoid Them*, Nielsen Norman Group (Dec. 1, 2023), https://www.nngroup.com/articles/deceptive-patterns/

27.     The below image provides examples of commonly employed dark patterns:[12]



28.     As the FTC explains, "dark patterns often take advantage of consumers' cognitive biases to steer their conduct or delay access to information needed to make fully informed decisions."[13] The image on the following page provides examples of cognitive biases, including some that Mindvalley exploits in its enrollment and cancellation processes:

---

[12] Sarbashish Basu, *What is a dark pattern? How it benefits businesses- Some examples*, H2S MEDIA (Dec. 19, 2019), https://www.how2shout.com/technology/what-is-a-dark-pattern-how-it-benefit-businesses-with-some-examples.html.

[13] FTC, *Shedding Light on Dark Patterns, supra* note 9, at 2.



29.     As the subscription industry has grown, so too has the use of dark patterns.

According to the FTC:

> For decades, unscrupulous direct mail marketers and brick-and-mortar retailers
> have relied on design tricks and psychological tactics . . . to get consumers to part
> with their money or data. As more and more commerce has moved online, so too
> have these manipulative design practices—termed 'dark patterns'—only grown in
> scale and sophistication, creating ever greater challenges for consumers.[14]

30.     Mindvalley has engaged in these unlawful subscription practices with great

success. Publicly available evidence suggests Mindvalley generates $150 million in annual

---

[14] FTC, *Shedding Light on Dark Patterns*, *supra* note 9, at 17.

revenue, with a "40% annual growth rate."[15] Mindvalley advertises a "community of more than 10 million people (and expanding)[.]"[16]

### B.    Mindvalley's Enrollment Process Violates the MCPA.

31.    Mindvalley has unique access to its historical enrollment pages. At all relevant times, Mindvalley funnels users to a universal payment page through two materially identical enrollment flows: one for users subscribing to a general membership, and one subscribing to a membership through a specific course.

32.    The two flows, which lead the user to the same payment page, do not differ materially in their non-compliance with the MCPA, including their: (1) deceptive representations as to the characteristics and quantities of their offerings; (2) advertising and representations with intent not to dispose of its goods and services as advertised; (3) failure to reveal material facts, the omission of which tends to deceive the consumer and which fact could not reasonably be known to the consumer; (4) making factual representations material to the transaction such that a person would reasonably believe the represented state of affairs to be other than it actually is; and (5) failure to reveal facts material to the transaction in light of representations made in a positive manner.

### 1.    General Membership Enrollment Flow

33.    On navigating to mindvalley.com, users are immediately solicited for membership, with the promise of "[a] better you every day" and a prominently displayed offer to "Become a member," as shown on the following page:

---

[15] https://stripe.com/en-mx/customers/mindvalley.

[16] https://careers.mindvalley.com/manifesto.



34.     Clicking the "Become a member" button directs the user to Mindvalley's general membership enrollment page (the "General Enrollment Page"). On arriving, the user is presented with a single, centrally located, and brightly colored button in high contrast with its background, inviting the user to "Become a member":





35. Clicking on this button does not navigate to another web page. Instead, the button is a "jump link" designed to immediately propel the consumer to a purchase solicitation at the bottom of the same web page. This "jump link," which scrolls down the web page in less than one second, bypasses all intervening information and, by design, deprives the user of a chance to review the page's full content. This tactic obscures material information and pushes the user toward an immediate transaction. Below is a reproduction of what consumers see after clicking the "Become a member" button:[17]

---

[17] This rapid scroll down to the enrollment link bypasses all content located between the top of the page and the payment link. This additional content is intentionally hidden from the user.



36.     Mindvalley unlawfully misrepresents its cancellation policy as "cancel anytime" and that the user can cancel with "one-click." This representation violates the MCPA in two ways. *First*, because Mindvalley later unilaterally reactivates accounts that have been successfully cancelled. Mindvalley's misrepresentation that a user can "cancel anytime" thus: (1) represents that Mindvalley subscriptions have characteristics that they do not have (i.e., on-demand cancellation to prevent future charges), M.C.L. § 445.903(1)(c); (2) advertises and represents Mindvalley's services with intent to not dispose of those services as represented (they are not cancellable at the user's request to prevent future charges), M.C.L. § 445.903(1)(g); (3) fails to reveal the material fact that cancellation often does not result in cessation of charges by Mindvalley, which misleads and deceives consumers and which consumers could not reasonably know, M.C.L. § 445.903(1)(s); (4) represents that cancellation may be undertaken by the user at any time to stop any further charges, causing the user to erroneously and reasonably believe this material fact is true, M.C.L. § 445.903(1)(bb); and (5) positively represents cancellation as effective to bar any further charges, but fails to reveal the material fact that Mindvalley continues to charge its users after cancellation, M.C.L. § 445.903(1)(cc).

37.    **Second**, this statement violates the MCPA because canceling is not a matter of "one-click," but is instead a lengthy process requiring at least **nine clicks** across at least **five browser windows**. The representation that a user can "cancel anytime" with "one click" omits that Mindvalley's nine-step cancellation process is specifically and intentionally designed to thwart cancellation requests. *See infra* 66–75. The representations that a user can "cancel anytime" with "one click" thus also: (1) represent that Mindvalley subscriptions have characteristics that they do not have (i.e., easy cancellation), M.C.L. § 445.903(1)(c); (2) represent Mindvalley's services with intent to not dispose of those services as represented (i.e., as cancellable at the user's request with a single click), M.C.L. § 445.903(1)(g); (3) fail to reveal the material fact that cancellation requires navigating a confusing, laborious process designed to **prevent** cancellation, which misleads and deceives consumers and which consumers could not reasonably know, M.C.L. § 445.903(1)(s); (4) misrepresents that cancellation is easily effectuated with "one-click", causing the user to erroneously believe this material fact is true, M.C.L. § 445.903(1)(bb); and (5) positively represents cancellation as easily effectuated with one click, but then fails to reveal the material fact that cancellation requires navigating a confusing, laborious process designed to **prevent** cancellation, M.C.L. § 445.903(1)(cc).

38.    Mindvalley's solicitation also omits, conceals, and suppresses material facts to deceive consumers and lure them into purchasing a recurring subscription. Mindvalley fails to inform consumers that the subscription will automatically renew until canceled, explain how a consumer can cancel, make clear that recurring charges will be imposed automatically (instead of, for example, through consumer opt-in at the end of the payment period), or state the length of the autorenewal term (or that it will be continuous). Based on Mindvalley's representations, a reasonable consumer would understand Mindvalley to be offering a one-time, fixed-term

membership of either one month or one year. In truth, no matter what option the user selects, at the end of the specified term, Mindvalley will automatically re-enroll the user for an additional subscription term. And as noted above, Mindvalley omits that it routinely charges accounts that have already been cancelled. These omissions of material fact violate, at minimum, M.C.L. §§ 445.903(1)(s) and (cc).

39.   Worse, what little information Mindvalley does provide is presented deceptively. Though it offers both "Monthly" and "Yearly" plans, Mindvalley pre-selects a one-year term to lock in a longer user commitment at a higher price, and employs dark patterns to take advantage of consumer inertia to have consumers default to the yearly plan (*e.g.*, highlighting the 1-year option in bright purple against the plain black-and-white of the monthly option, deploying a bright green box to advertise the "savings" of the 1-year option, placing both "yearly" and "monthly" in vanishingly small text obscured by attractive slogans and a brightly colored invitation to enroll).

40.   Mindvalley's solicitation banner also deceives consumers by providing a false impression regarding the material terms of the transaction. Omitting the terms of its automatic renewal offer (*supra* ¶ 38), misrepresentations and omissions relating to its cancellation process and policy of charging already-cancelled accounts (*supra* ¶¶ 36–38), and use of deceptive dark-pattern design to steer consumers into the pre-selected year-long plan (*supra* ¶ 39), all operate to manipulate prospective consumers into choosing the course of action most profitable to Mindvalley, in violation of the MCPA.

41.   When users click on the "Join Membership" button, they are taken to the Mindvalley payment page, described in greater detail below. *See infra* at section D.

## 2.  Course-Specific Enrollment Flow

42.     The course-specific enrollment flow does not materially differ from the general enrollment flow described above. Nor does the course-specific enrollment flow vary materially across different courses. Like the general enrollment flow, it violates the MCPA.

43.     The layout of the course-specific enrollment page (the "Course-Specific Enrollment Page") is materially identical to the General Enrollment Page. On arriving, the user is similarly presented with a single, centrally located, and brightly colored button in high contrast with its background, inviting the user to "Join the program":



44.     Mindvalley then deploys the same "jump link" tactic it uses on its General Enrollment Page. Here, too, clicking on the "Join the program" button does not take the user to a separate page. Instead, the button is another "jump link," which propels the user directly to a purchase solicitation near the bottom of the same page. As on the General Enrollment Page, this jump occurs almost instantaneously, skipping all intervening content. By collapsing the page in this way, Mindvalley deprives consumers of an opportunity to review the page's content before being funneled into a purchase decision.

45.     The first section the user lands on, reproduced on the following page, features a large promotional banner styled as an invitation to purchase a Mindvalley membership. This banner omits all terms of its automatic renewal offer and any material facts regarding cancellation. Instead, users are instructed to "[b]ecome a Mindvalley member now, and begin your transformational journey":



46.     Directly beneath this banner is the purchase solicitation, which is reproduced on the following page:



47.     The Course-Specific Enrollment Page's purchase solicitation does not materially differ from the purchase solicitation on the General Enrollment Page.

48.     ***First***, the Course-Specific Enrollment Page's purchase solicitation promises, nearly word-for-word, the same benefits of membership, including the exact same misrepresentation as to Mindvalley's cancellation policy: that the user can "cancel anytime" with "one-click." On the following page are the representations from the General Enrollment Page (on the left) and the Course-Specific Enrollment Page (on the right):





49.     Mindvalley's misrepresentations and omissions mislead the consumer into believing that cancelling a Mindvalley subscription is easy and effective in preventing further charges. Mindvalley further fails to disclose: (1) its practice of charging accounts that have been successfully cancelled; and (2) the maze-like, 9-step process designed to frustrate consumers' efforts to cancel. As with the General Enrollment Page, *see supra* ¶¶ 33–40, the Course-Specific Enrollment Page thus violates the MCPA. *See* M.C.L. §§ 445.903(1)(c), (g), (s), (bb), (cc).

50.     ***Second***, as on the General Enrollment Page, the solicitation banner on the Course-Specific Enrollment Page omits several material facts in a way that deceives consumers and prevents them from making an informed decision. Mindvalley fails to inform consumers that the subscription will automatically renew until canceled, explain how a consumer can cancel, make clear that recurring charges will be imposed automatically (instead of, for example, through consumer opt-in at the end of the payment period), or state the length of the autorenewal term (or

that it will be continuous). Based on the terms shown, a reasonable consumer would understand Mindvalley to be offering a one-time, fixed-term membership of either one month or one year. In truth, no matter what option the user selects, at the end of the specified term, Mindvalley will automatically re-enroll the user for an additional subscription term. And, as on the General Enrollment Page, Mindvalley also omits that it routinely charges accounts that have already been cancelled. *See supra* ¶ 38. These omissions of material facts violate, at minimum, M.C.L. §§ 445.903(1)(s) and (cc).

51.     As with the General Enrollment Page, a reasonable consumer reviewing Mindvalley's purchase solicitation would thus understand Mindvalley to be offering a one-time, fixed-term membership of either one month or one year. In truth, no matter what option the user selects, at the end of the specified term, Mindvalley will automatically re-enroll the user for an additional subscription term.

52.     ***Third***, Mindvalley again pre-selects the "membership yearly" for the user and again employs deceptive dark patterns (highlighting the yearly membership in bright orange, as opposed to the dull gray of the monthly membership, and presenting the yearly option in a larger box) to steer the user to the more profitable choice for Mindvalley. Here, too, no link to Mindvalley's Terms and Conditions is provided.

53.     Mindvalley's Course-Specific Page's solicitation banner thus deceives consumers in exactly the same way as the General Enrollment Page's solicitation banner. It omits the terms of Mindvalley's automatic renewal offer (*supra* ¶ 50), misrepresents and omits material facts relating to its cancellation process and policy of charging already-cancelled accounts (*supra* ¶¶ 48–50), and uses a deceptive dark-pattern design to steer consumers into the pre-selected year-long

plan (*supra* ¶ 52). Each of these practices operate to manipulate consumers into taking the course of action most profitable to Mindvalley, in violation of the MCPA.

54.    As on the General Enrollment Page, users are then presented with a "Join membership" button, which directs them to Mindvalley's payment page, which is used for both general enrollment and course-specific consumers (the "Payment Page").

### C.    Mindvalley's Payment Page Violates the MCPA.

55.    Mindvalley's Payment Page—which is the same for all prospective Mindvalley members—is reproduced below:



56.     The payment page violates the MCPA in multiple ways. *First,* the terms of Mindvalley's automatic renewal offer are actively concealed. They are hidden at the bottom corner of the page, in very small, gray text in low contrast to a white background. The eye is drawn away from the disclosure and towards the brightly colored "Subscribe" button. As with Mindvalley's enrollment page, the payment page's design *deemphasizes* the notice text, rather than making it ***conspicuous***. Mindvalley's "disclosure" is also not in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language. Mindvalley is using the "deliberate misdirection" dark pattern to prevent its consumers from making an informed choice. Mindvalley's intentional design choices violate the MCPA. *See* M.C.L. § 445.903(1)(s), (cc).

57.     ***Second,*** even if Mindvalley's disclosure was clear and conspicuous (it is not), it contains further misstatements and omissions that violate the MCPA. Specifically, Mindvalley again misrepresents its policy of charging after cancellation. Under the "Subscribe" button, Mindvalley assures the user that they can "[c]ancel anytime before renewal to avoid future charges." Even more explicitly than the statement that a user can "cancel anytime" with "one click," this statement (falsely) assures the consumer that he or she will not be charged following cancellation. This statement thus: (1) represents that Mindvalley subscriptions have characteristics that they do not have (on-demand cancellation without further charges), M.C.L. § 445.903(1)(c); (2) fails to reveal the material fact that cancellation often does not result in cessation of charges by Mindvalley, which misleads consumers and which consumers could not reasonably know, M.C.L. § 445.903(1)(s); (3) misrepresents that cancellation may be undertaken by the user at any time to stop any further charges, causing the user to erroneously believe this material fact to be true,

M.C.L. § 445.903(1)(bb); and (4) positively represents cancellation to bar any further charges but then fails to reveal the material fact that Mindvalley continues to charge its users after cancellation, M.C.L. § 445.903(1)(cc).

58.     **Third**, Mindvalley's promise that a user can "cancel anytime" fails to reveal the material fact that Mindvalley's cancellation process is obstructive and intended to prevent cancellation. This tends to mislead or deceive consumers and could not reasonably be known to them, M.C.L. § 445.903(1)(s), and is material to the transaction in light of representations of fact made in a positive manner (that the user may "cancel anytime"), M.C.L. § 445.903(1)(cc). It also causes the consumer to reasonably believe the suggested state of affairs for this material fact is other than it actually is (i.e., it represents that cancellation is easy and effective when it is neither), M.C.L. § 445.903(1)(bb).

59.     **Fourth**, any "disclosures" Mindvalley provides still omit several material terms of its automatic renewal offer (which consumers could not reasonably know), with the result that a reasonable consumer is likely to be misled. First, Mindvalley never states that the subscription will continue until the consumer cancels. Second, Mindvalley says "[c]ancel anytime" but does not provide any information about how to cancel. Third, Mindvalley does not state the recurring charges that will be charged to the consumer, instead stating only that the membership will renew "at the current rate"—a number not disclosed anywhere on the Payment Page. Fourth, Mindvalley omits the length of the automatic renewal term, stating only that renewal will take place "each billing period" and "at each renewal, per your plan's terms." Because Mindvalley pre-selects a one-year renewal period, *see supra* ¶¶ 39, 52, rather than prompt users to select the length of the term, this is an omission of a material fact—the length of the subscription. The only reference to the length of the billing period is the word "yearly," written in small, low-contrast font and placed

at the opposite corner of the screen—a design choice that further serves to conceal the length of the billing period. And Mindvalley does not disclose its practice of charging accounts that have already been cancelled. These omissions of material fact violate, at minimum, M.C.L. §§ 445.903(1)(s) and (cc).

60.     Mindvalley also does not provide any clear, conspicuous link to its Terms & Conditions. The link is placed on the bottom left corner of the Payment Page on the opposite side of the page from the Subscribe button, is in small type and light gray font in low contrast with the white background. It is not underlined or in any way designed to draw the attention of the user— even the title of the link ("Terms" rather than "Terms & Conditions") is designed to be as small and inconspicuous as possible. A reproduction of the Payment Page demonstrating the placement of the "Terms" link is shown on the following page:



61.     A prospective Mindvalley member can, by design, complete the entire enrollment process without ever seeing a disclosure of: (1) the terms of Mindvalley's automatic renewal offer; (2) its cancellation process (and difficulties inherent therein); or (3) Mindvalley's practice of charging cancelled accounts. Through its affirmative misrepresentations, strategic omissions, and extensive use of unconscionable, unfair, and deceptive "dark pattern" design, Mindvalley manipulates consumer behavior to maximize profit.

62.     Mindvalley's enrollment flow thus violates the MCPA.

**D.    Mindvalley's Post-Purchase Acknowledgment Email Violates the MCPA.**

63.    After a customer signs up for a Mindvalley membership, Mindvalley sends them an email with the subject line "Welcome to Mindvalley." An exemplar is shown below:



64.    Mindvalley's post-enrollment acknowledgment email continues to omit material facts. It does not include the automatic renewal terms, describe the cancellation policy or how to cancel, or describe any easy-to-use mechanism for canceling.

65.    Further, the "Unsubscribe" link in the above email does not direct the user to a page to cancel their subscription but instead directs the user to a page to manage the frequency of emails they receive from Mindvalley.

**E.      Mindvalley's Cancellation Process is Unconscionable, Unfair, and Deceptive.**

66.     Mindvalley repeatedly represents that a consumer can "cancel anytime before renewal to avoid future charges," and that cancellation can be effectuated with "one-click." Even setting aside Mindvalley's practice of reactivating accounts after cancellation and resuming billing, this representation omits the material fact, which consumers could not reasonably know, that Mindvalley's cancellation process is deliberately designed to obstruct cancellation. Mindvalley's representations regarding its cancellation process are thus untrue and misleading.

67.     To cancel, consumers must first navigate to Mindvalley's home page and log into their account. The home page is reproduced below: Then, the consumer must (1) hover their mouse above a tiny, unlabeled icon on the top right of the home page, as reproduced below and marked with a red arrow for clarity:



68.     From there, the user must (2) select "Account" from the pop-up menu that appears below the icon. That menu is reproduced on the following page:



69.    Once the user has reached their account page, they must (3) select "Billing & Subscriptions" from a list of seven options:



70.    The default view of the "Billing & Subscriptions" page, reproduced on the following page, does not mention cancellation and provides no guidance on cancellation. A bold-faced header at the bottom of the page instead invites users to "explore other products."



71.    The user must (4) click on "Subscription Settings," under the Active Subscriptions box. When clicked, the box expands, presenting two options, "Request Refund" and "Cancel Subscription":



72.     The user must then (5) click on "Cancel Subscription," which takes them to another page which pushes users to "[s]tay now and keep your exclusive rate" and invites them, through a highlighted button, to "Explore More Options" rather than "Continue to Cancellation":



73.    If the user (6) clicks "Continue to Cancellation," they are presented with a pop-up that itself requires two additional "clicks" – the user must (7) "Tell [Mindvalley] Why You're Leaving" and (8) select a button confirming that they understand that canceling will deprive them of access to "premium features and my progress after my current billing period ends." Until the user completes both of these tasks, the Cancel Subscription button is grayed-out, inactive, and unusable, while a "Nevermind, I'm Staying"[18] button is active, and highlighted to draw the user's attention. This pop-up is reproduced on the following page.

---

[18] Clicking on the "Nevermind, I'm Staying" button returns the user to the "Billing & Subscriptions" page, forcing the user to repeat over half the process if they wish to cancel.



74.    Only if the user selects both buttons are they finally presented with a "Cancel Subscription" button that, when (9) clicked by the user, finally cancels their subscription:



75.     Mindvalley's nine-step process for cancellation is specifically and intentionally designed to thwart cancellations and refund requests—a "roach motel" dark pattern—that prevents customers from canceling subscriptions and stopping recurring billing.

**F.      Mindvalley's Long History of Injurious Billing and Cancellation Practices.**

76.     Mindvalley's actions have harmed consumers throughout Michigan and beyond, resulting in legions of consumers voicing their discontent online. Below is merely a small sampling of negative reviews left by subscribers regarding Mindvalley's unscrupulous practices:



**TOTAL SCAM**

TOTAL SCAM! Run away and NEVER give them your card details! I cancelled my subscription months before it was due to end. I just realised they credited my card and registered a new year as if nothing had happened. I contacted them and they're proposing to transfer the subscription to someone else. What a scam! They're supposed to help people, not to scam them.



**Charged me after cancellation of membership**

This guys are horrible..there app doesn't work properly. I had cancelled my membership months before the due date and they still debited my account and now refuse to refund my money. After writing to them they cancelled my membership. On the app it is showing cancelled twice and still not refunding money. This is ridiculous



**Scammy**

Scammy. Horrible. Waste of time. Charged me for another year even though I had cancelled.



**If you cancel your subscription, take a screenshot immediately**

I canceled my Mindvalley subscription well before the renewal date. The system clearly showed the status as "Canceled." I trusted that everything was handled and didn't expect any further action would be needed.

Despite that, I was charged. I never received a cancellation email, and later the cancellation disappeared from my account entirely. I contacted support multiple times, explained everything, and was met with polite but useless responses that completely ignored the core issue.



**Watch out from subscription and...**

Watch out from subscription and renewals. The customer experience is horrible!
The idea of Mindvalley is nice. I signed up hoping I'll use it more. I didn't hence didn't even occur to me to renew. To my surprise I get an email that I was charged $300 what??
I was sure I can just reach out because they can see I never used the system and was just charged today another $300. Sure enough, like the other reviews here say, they tell you "there is nothing we can do to refund this". Now I do get that if someone comes weeks or months later they cant refund but I contacted them within hours of the renewal that I didn't agree to. This company is probably going under and holding on to people that didn't realize they were on auto renew. Triple check and I would unsubscribe if I was you reading this. You can always decide to subscribe again.



**I have cancelled my subscription and...**

I have cancelled my subscription and sent three emails to the company's support team to make sure it was ok.
And guess what — they still charged my account! I really hope I'll get my money back.
I will never do business with these people again, and I will never recommend them to anyone else. Is this really how you do business?!

It is so interesting to me: you reply to my Trust pilot comment, but sending yor support an e-mail is sending it into nothingness.



**Greedy**

Had the subscription for a year and didn't realize it was going to renew. When I saw the charge I asked them to cancel and refund the renewal. They already had $299 for the first year which they could well see was barely used, only in the beginning. No refund. Very disappointing for people who are supposedly promoting mindfulness and wellbeing. I see now what promotes their wellbeing.



**Do not trust these Thieves**

Do not trust these Thieves. I paid for a subscription first year an then canceled. Couple of days ago they charged me again with 186£ for another year althouh there was no subscription. I have contacted them and they said that the refund is not possible. Now i need to go and speak with the bank and explain that this is a fraud and can be proven, now i even need to change my card because i do not trust these scammers . Just avoid them

 ✓ Verified

**I've been trying to unsubscribe which...**

I've been trying to unsubscribe which seems virtually impossible. You don't get an option to when you want to change the settings of your subscription. Such a spamming business...



**I had a horrible experience with...**

I had a horrible experience with mindvalley. they charged me for a new subscription without authorization. the customer service is horrible. I have not received anything that stated they would <mark>renew</mark>. I never checked any auto-<mark>renew</mark> box and you can only communicate through whatsapp. I believe that is illegal. I saw that there are at least 100 complaints through the better business bureau. Anyone else has done anything about this?



**Fraudulent billing practices and ZERO phone support**

Be very careful dealing with this company. Their material is highly questionable and they extend your membership for $299 automatically and refuse to cancel it even if you try to do it on the same day the membership is renewed. I foolishly subcribed to their app, barely used it, did not know that it was on auto <mark>renew</mark> and got stuck with another year of worthless non-cancelable membership. Credit card dispute is ongoing. This screams FRAUD. Totally dishonest and horrible customer service. Can't speak with anyone on the phone. Communication is through email only with 2 days lag time. Beware and stay away.



**Mindvalley is fooling you on purpose**

Vishen is not a badass. He is a shifty sales guy. His business model is to auto renew your membership. You don't notice and when you do you have payed 300 dollars a year for two years without even using the content. Mindvalley is in it for the money. Your money. If they had been in the business to help people they wouldn't have earned their money on fooling people to buy products that they do not want. Do yoga and qigong instead. It's practically free. Instead of having a former engineer tell you how to hold an energy ball for hundreds of dollars



**Got charged with the auto-renewal**

Got charged with the auto-renewal. There is no button on the site to turn off auto-<mark>renew</mark>. Their customer service is AI (in training) that does not help but refers you to their site. Cancelled membership, got charged for a whole year. No refund, canceled within 15 days.



**BEWARE! Dishonest & No Customer Care**

I signed up a year ago, not realizing that the membership auto-renewed. Today I received a receipt for another subscription. I contacted customer service immediately saying that I want to cancel and be refunded. I was told auto renew is not refundable and I should have cancelled when I was notified that the membership was renewing. I was NOT notified. The agent told me he would transfer me and to stay on the chat. No one got back to me. For a platform marketed about spirituality and personal growth, the lack of care for their customers is extremely distasteful

**Scammy auto renewal practise.**

They sent me a link to cancel renewal, which never worked. Then they went ahead and charged the renewal. When I contacted them, on the day they charged, they basically replied "too bad the link didn't work, but we won't refund you either way. Scammy practise.

### G.    Mindvalley's Scheme Injured Plaintiff Hamilton.

77.    Plaintiff Hamilton paid $99.00 for a Mindvalley membership on or around September 24, 2022.

78.    Dissatisfied with Mindvalley's programming, Ms. Hamilton canceled her membership on October 5, 2022 and requested a refund. In this instance, Mindvalley refunded Ms. Hamilton and represented to her via email that her subscription had been canceled and no further charges would be made to her account. Ms. Hamilton relied on this representation and expected that Mindvalley would make no further charges to her account.

79.    Despite Mindvalley's representation that Ms. Hamilton's subscription had been canceled, on or about May 30, 2025, Mindvalley unlawfully reactivated Ms. Hamilton's account and charged her $49.00 without authorization. Ms. Hamilton did not immediately notice this unlawful charge.

80.    On or about June 30, 2025, Mindvalley again unlawfully charged Ms. Hamilton $49.00 for the "renewal" of her unauthorized monthly subscription.

81.     On or about July 2, 2025, Ms. Hamilton noticed Mindvalley's unlawful charges. She logged into the Mindvalley website and managed to cancel her unlawfully reactivated subscription to prevent any further charges.

82.     On July 2, 2025, Mindvalley sent Ms. Hamilton an email confirming that her "subscription has been canceled successfully on July 2, 2025, and no further charges will be made to your account." However, Mindvalley did not refund the $98.00 it unlawfully charged Ms. Hamilton and continued to send her unwanted promotional emails.

83.     On July 21, 2025, Ms. Hamilton responded to a Mindvalley marketing email demanding that Mindvalley "remove my membership immediately," "do not charge me again," "confirm you have cancelled my membership," and demanded that Mindvalley "immediately refund" the unlawful charges made on May 30 and June 30.

84.     Mindvalley did not refund Ms. Hamilton's money.

85.     Instead, on August 24, 2025, Mindvalley again unlawfully reactivated Ms. Hamilton's account and again charged her $49.00 without authorization. Believing Mindvalley's representation that "no further charges would be made to [her] account," Ms. Hamilton did not notice this unlawful charge.

86.     On September 24, 2025, Mindvalley again unlawfully charged Ms. Hamilton $49.00 for "renewal" of her unauthorized monthly subscription.

87.     That same day, Ms. Hamilton emailed Mindvalley customer service, demanding a refund and that her account be cancelled. Mindvalley refused to provide a refund.

88.     All told, Mindvalley unlawfully charged Ms. Hamilton approximately $196 and has not refunded the money.

89.     Ms. Hamilton was also injured by Mindvalley's subscription practices because, had she known the truth about Mindvalley's intentionally misleading subscription practices, she would not have purchased a Mindvalley course or membership.

90.     Ms. Hamilton intends to purchase products and services in the future for herself from online wellness and self-help platforms, including Mindvalley, as long as she can gain some confidence in Mindvalley's representations about its products and services and subscription practices. Moreover, Mindvalley still has Ms. Hamilton's payment information and could use it to process unauthorized payments in the future.

## RULE 9(B) ALLEGATIONS

91.     To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

92.     **WHO**: Mindvalley sells services to consumers in Michigan through an unconscionable, unfair, and deceptive subscription scheme by making the material misrepresentations and omissions alleged in detail above in violation of Michigan consumer protection statutes and the common law, including with respect to Mindvalley's automatic renewal policy, unauthorized reactivation of cancelled accounts, and cancellation process, leaving many consumers who sign up for a Mindvalley service paying for subscriptions that they do not want.

93.     **WHAT**:

- **Mindvalley fails to disclose the material automatic renewal terms.** Mindvalley's payment page and enrollment banners do not clearly and conspicuously disclose that a Mindvalley membership will automatically renew until canceled; provide a description of how a consumer can cancel; make clear that recurring charges will be imposed automatically; or state the length of the automatic renewal term (or that it will be continuous). Moreover, Mindvalley's payment page does not clearly and conspicuously disclose the price at which the membership will

automatically renew and does not provide a clear or conspicuous link to Mindvalley's Terms & Conditions.

- **What little information Mindvalley did disclose was designed to be hidden from consumers.** Where Mindvalley does provide limited disclosures, they are displayed in small, low-contrast text, intentionally bypassed by "jump links," or obscured by brightly colored graphics, banners, and calls to action that deliberately draw the consumer's attention elsewhere. These design choices intentionally hide important terms from consumers and deprive them of the ability to make an informed choice.

- **Mindvalley deliberately obstructed users' efforts to cancel.** Mindvalley buries its cancellation mechanism deep within its account portal, requiring users to navigate multiple menus to find it. Even when consumers do find the cancellation mechanism, they are presented with pop-ups and misleading screens that discourage cancellation through misleading prompts and extra steps. This is a classic "roach motel" dark pattern design: easy to get in, but hard to get out.

- **Mindvalley issued post-purchase acknowledgment emails that omitted material automatic renewal offer terms and information on cancellation.** Mindvalley's post-purchase emails omit automatic renewal offer material terms, including providing no description of how to cancel.

- **Mindvalley reactivated cancelled accounts and charged those accounts without authorization.** Mindvalley represents to consumers that they may cancel their subscriptions at any time to "avoid future charges." In reality, Mindvalley maintains a practice of ignoring these cancellations or unilaterally reactivating accounts that were successfully cancelled, often months or years after the consumer terminated the relationship. Without providing notice or obtaining any new authorization, Mindvalley uses stored payment information to initiate fresh charges against these cancelled accounts. These unauthorized transactions are executed without the consumer's consent and in direct contradiction to Mindvalley's express representations that "no further charges" would occur, effectively forcing consumers back into a paid subscription they already took affirmative steps to terminate.

94.     **WHERE**: Mindvalley's deceptive and unlawful subscription scheme is conducted through its website, mobile/tablet/desktop applications, and electronic communications with customers.

95.     **WHEN**: Mindvalley has been engaging in its deceptive and unlawful subscription scheme for years, and the scheme is ongoing. For a specific example, Mindvalley used its deceptive and unlawful subscription scheme when Plaintiff enrolled in Mindvalley offerings in

September 2022, and when it charged Plaintiff's cancelled account without authorization in May, June, August, and September of 2025. Information as to precisely how long Mindvalley's deceptive practices have been taking place is exclusively in the possession of Mindvalley. However, publicly available records reviewed by Plaintiff's counsel show that consumers began reporting injuries from Mindvalley's deceptive and unlawful practices at least as early as 2021.

96.     **WHY**: Mindvalley uses its unconscionable, unfair, and deceptive subscription scheme to trap its customers into paying for Mindvalley subscriptions. As a direct result of this scheme, Mindvalley has successfully reaped tens of millions in unlawful charges at the expense of unsuspecting customers.

97.     **HOW**: Mindvalley conducts its deceptive and unlawful subscription scheme by making the material misrepresentations and omissions in violation of Michigan consumer protection law and the common law alleged in detail above.

## CLASS ACTION ALLEGATIONS

98.     Plaintiff brings this action on her own behalf and additionally, pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class that is preliminarily defined as all Mindvalley customers in Michigan (including customers of companies Mindvalley acts as a successor to) who were automatically enrolled into and charged for at least one month of a Mindvalley subscription at any time from the applicable statute of limitations period to the date of judgment (the "Michigan Class").

99.     Plaintiff also brings this action on her own behalf and additionally, pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class that is preliminarily defined as all Mindvalley customers in Michigan (including customers of companies

Mindvalley acts as a successor to) who canceled a Mindvalley subscription, never re-enrolled in a Mindvalley subscription, and were subsequently charged for a Mindvalley subscription.

100. As alleged throughout this Complaint, the Class claims all derive directly from a single course of conduct by Mindvalley. Mindvalley has engaged in uniform and standardized conduct toward the Class—its marketing, enrollment, cancellation, and subscription reactivation practices—and this case is about the responsibility of Mindvalley, at law and in equity, for their knowledge and conduct in deceiving their customers. This conduct did not meaningfully differentiate among individual Class members in its degree of care or candor, its actions or inactions, or in the content of its statements or omissions. The objective facts on these subjects are the same for all Class members.

101. Excluded from the Class are: Mindvalley; any parent, subsidiary, or affiliate of Mindvalley; any entity in which Mindvalley has or had a controlling interest, or which Mindvalley otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Mindvalley. Also excluded are federal, state and local government entities; and any judge, justice, or judicial officer presiding over this action and the members of their immediate families and judicial staff.

102. Plaintiff reserves the right, as might be necessary or appropriate, to modify or amend the definition of the Class when Plaintiff files her motion for class certification.

103. Plaintiff does not know the exact size of the Class since such information is in the exclusive control of Mindvalley. Plaintiff believes, however, that the Class encompasses thousands of consumers whose identities can be readily ascertained from Mindvalley's records. Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

104.    The Class is ascertainable because its members can be readily identified using data and information kept by Mindvalley in the usual course of business and within its control. Plaintiff anticipates providing appropriate notice to each Class Member in compliance with all applicable federal rules.

105.    Plaintiff is an adequate class representative. Plaintiff's claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class. Plaintiff and the other members of the Class were subject to the same or similar conduct engineered by Mindvalley. Further, Plaintiff and members of the Class sustained substantially the same injuries and damages arising out of Mindvalley's conduct.

106.    Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff has retained competent and experienced class action attorneys to represent her interests and those of the Class.

107.    Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

    a.  Whether Mindvalley's conduct violates the Michigan Consumer Protection Act;

    b.  Whether Mindvalley's conduct violates M.C.L. § 600.2919a;

    c.  Whether Mindvalley's conduct violates the applicable common law doctrines;

    d.  Whether Mindvalley was unjustly enriched as a result of its conduct;

    e.  Whether Class Members have been injured by Mindvalley's conduct;

    f.  Whether, and to what extent, equitable relief should be imposed on Mindvalley to prevent it from continuing its unlawful practices; and

    g.  The extent of class-wide injury and the measure of damages for those injuries.

108.    A class action is superior to all other available methods for resolving this controversy because: (1) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; (2) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Mindvalley's conduct; (3) Mindvalley has acted or refused to act on grounds generally applicable to all Class Members; and (4) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

109.    Further, the following issues are also appropriately resolved on a class-wide basis under Federal Rule of Civil Procedure 23(c)(4):

a.    Whether Mindvalley's conduct violates the Michigan Consumer Protection Act;

b.    Whether Mindvalley's conduct violates M.C.L. § 600.2919a;

c.    Whether Mindvalley's conduct violates the applicable common law doctrines;

d.    Whether Mindvalley was unjustly enriched as a result of its conduct;

e.    Whether Class Members have been injured by Mindvalley's conduct; and

f.    Whether, and to what extent, equitable relief should be imposed on Mindvalley to prevent it from continuing its unlawful practices.

110.    Accordingly, this action satisfies the requirements set forth under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

## COUNT I

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

111.    Plaintiff incorporates by reference all preceding and subsequent paragraphs.

112.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Michigan Class.

113.    The Michigan Consumer Protection Act prohibits "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." M.C.L. § 445.903.

114.    The MCPA specifically defines the following methods, acts, or practices as unfair, unconscionable, or deceptive:

      a.  "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have[.]" *Id.* § 445.903(1)(c);

      b.  "Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented." *Id.* § 445.903(1)(g);

      c.  "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known to the consumer." *Id.* § 445.903(1)(s);

      d.  "Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is." *Id.* § 445.903(1)(bb); and

      e.  "Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." *Id.* § 445.903(1)(cc).

115.    Mindvalley engaged in trade or commerce by offering wellness and self-help programming primarily for personal, family, or household purposes.

116.    As detailed herein, Mindvalley represented that its goods or services have characteristics they do not have.

117.    As detailed herein, Mindvalley advertised and/or represented its subscriptions with intent not to dispose of those subscriptions as advertised or represented.

118.    As detailed herein, Mindvalley failed to reveal material facts, the omission of which tended to mislead and/or deceive its consumers, and which could not reasonably have been known to those consumers.

119.    As detailed herein, Mindvalley made representations and/or statements of fact material to the purchase of its subscriptions such that its consumers reasonably believed the represented and/or suggested state of affairs to be other than it actually was.

120.    As detailed herein, Mindvalley failed to reveal facts material to the purchase of its subscriptions that were material to the transaction in light of representations of fact Mindvalley made in a positive manner.

121.    Mindvalley's unfair, unconscionable, and deceptive statements and omissions were material to any consumer deciding whether to enroll in a Mindvalley subscription.

122.    Mindvalley made these unfair, unconscionable, and deceptive statements and omissions with the intent that its customers rely upon such statements.

123.    As a direct and proximate result of Defendants' unfair, unconscionable, and deceptive acts and practices, Plaintiff and Class Members suffered and continue to suffer an ascertainable loss of monies, including but not limited to the price of Mindvalley subscription fees they did not intend to pay for.

124.    Plaintiff and Class Members suffered an ascertainable loss caused by Mindvalley's misrepresentations and omissions because they would not have enrolled in a Mindvalley subscription had the true facts concerning Mindvalley's subscription, cancellation, and reactivation practices been known.

125.    Mindvalley knows full well that it engages in unfair, unconscionable, and deceptive subscription, cancellation, and reactivation practices, and the misrepresentations and omissions it

makes with regard to such practices were made to induce customers to enroll in Mindvalley subscriptions, so it can reap outrageous profits to the direct detriment of its Michigan customers and without regard to the consequences its charges cause such customers.

## COUNT II

### COMMON LAW FRAUD

126.    Plaintiff incorporates by reference all preceding and subsequent paragraphs.

127.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

128.    As discussed above, Mindvalley made materially misleading statements and/or omissions regarding its practice of charging Mindvalley subscribers even after they had cancelled their subscriptions, including:

   a. Stating that Mindvalley subscribers could "cancel anytime" or "cancel anytime before renewal to avoid future charges" even though Mindvalley knows that it maintains a practice of reactivating and charging the accounts of consumers who have cancelled their subscriptions;

   b. Failing to adequately disclose to consumers that Mindvalley maintains a practice of reactivating and charging the accounts of consumers who have cancelled their subscriptions; and

   c. Stating and creating the net impression that, if Mindvalley subscribers cancel their subscription, they will not be charged again by Mindvalley, when in fact Mindvalley maintains a practice of reactivating and charging the accounts of consumers who have cancelled their subscriptions.

129.    In deciding to purchase a Mindvalley subscription, Plaintiff and the Classes reasonably relied on these misrepresentations and/or omissions to form the mistaken belief that they could "cancel anytime" and, upon doing so, guarantee against any future charges by Mindvalley.

130.    Mindvalley's fraudulent conduct was knowing and intentional. Mindvalley knows that it maintains a practice of reactivating and charging accounts that had previously been

cancelled. Mindvalley's misrepresentations and omissions were intended to induce, and actually induced, Plaintiff and Class Members to become Mindvalley customers.

131.    Mindvalley's fraud caused damage to Plaintiff and the Class, who are entitled to damages and other legal and equitable relief as a result.

132.    Mindvalley's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights and well-being of Plaintiff and Class Members to enrich Mindvalley. Mindvalley's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## COMMON LAW CONVERSION

133.    Plaintiff incorporates by reference all preceding and subsequent paragraphs.

134.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

135.    Plaintiff and the Class own and have a right to possess the money that is in their respective bank accounts, internet payment accounts, and/or credit cards.

136.    Defendant substantially interfered with Plaintiff and the Class's possession of this money by knowingly and intentionally making unauthorized charges to their bank accounts, internet payment accounts, and/or credit cards for Mindvalley subscriptions.

137.    Plaintiff and the Class never consented to Defendant's taking of this money from their bank accounts, internet payment accounts, and/or credit cards.

138.    Defendant wrongfully retained dominion over this monetary property and/or the time value of the monetary property.

139.    Plaintiff and the Class have been damaged by Defendant's wrongful taking and/or possession of such money from their bank accounts, internet payment accounts, and/or credit cards in an amount that is capable of identification through Defendant's records.

140.    By reason of the foregoing, Defendant is liable to Plaintiff and the Class for conversion in an amount to be proved at trial.

## COUNT IV

### STATUTORY CONVERSION – VIOLATION OF M.C.L. § 600.2919a

141.    Plaintiff incorporates by reference all preceding and subsequent paragraphs.

142.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

143.    Plaintiff and the Class own and have a right to possess the money that is in their respective bank accounts, internet payment accounts, and/or credit cards.

144.    Defendant substantially interfered with Plaintiff and the Class's possession of this money by knowingly and intentionally making unauthorized charges to their bank accounts, internet payment accounts, and/or credit cards for Mindvalley subscriptions.

145.    Plaintiff and Class Members never consented to Defendant's taking of this money from their bank accounts, internet payment accounts, and/or credit cards.

146.    Defendant wrongfully retained dominion over this monetary property and/or the time value of the monetary property.

147.    Defendant employed the converted monetary property to its own use for some purpose personal to Defendant's interests, e.g., using the converted monetary property to perpetuate its subscription scheme.

148.    Plaintiff and the Class have been damaged by Defendant's wrongful taking and/or possession of such money from their bank accounts, internet payment accounts, and/or credit cards in an amount that is capable of identification through Defendant's records.

149.    By reason of the foregoing, Defendant is liable to Plaintiff and the Class for conversion in an amount to be proved at trial.

150.    Due to Mindvalley's statutory conversion, Plaintiff and the Class are entitled to treble damages, costs, and reasonable attorney's fees.

## COUNT V

### UNJUST ENRICHMENT

151.    Plaintiff incorporates by reference all preceding and subsequent paragraphs.

152.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

153.    As a result of its unjust conduct, Defendant has been unjustly enriched.

154.    By reason of Defendant's wrongful conduct, Defendant has benefited from receipt and maintenance of improper funds, and under principles of equity and good conscience, Defendant should not be permitted to keep this money.

155.    As a result of Defendant's conduct it would be unjust and/or inequitable for Defendant to retain the benefits of its conduct without restitution to Plaintiff and the Class. Accordingly, Defendant must account to Plaintiff and the Class for Defendant's unjust enrichment.

## COUNT VI

### MONEY HAD AND RECEIVED

156.    Plaintiff incorporates by reference all preceding and subsequent paragraphs.

157.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

158.    Defendant received money from Plaintiff and from each Class Member.

159.    The monies belong to Plaintiff and each Class Member.

160.    Defendant has not returned the money.

161.    Plaintiff, on behalf of herself and the Class Members, seeks the return of the money

in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(a)    Issue an order certifying the Classes defined above, appointing Plaintiff as Class representative, and designating Keller Rohrback L.L.P., Wittels McInturff Palikovic, and the Long Law Firm, PLLC as Class Counsel;

(b)    Find that Defendant has committed the violations of law alleged herein;

(c)    Determine that Defendant has been unjustly enriched as a result of its wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Classes;

(d)    Enter an order granting all appropriate relief including injunctive relief on behalf of the Classes under the applicable laws;

(e)    Render an award of compensatory damages of at least $50,000,000, the exact amount of which is to be determined at trial;

(f)    Issue an injunction or other appropriate equitable relief requiring Defendant to refrain from engaging in the deceptive and unlawful practices alleged herein;

(g)    Declare that Defendant has committed the violations of law alleged herein;

(h)    Render an award of punitive damages;

(i)    Enter judgment including interest, reasonable attorneys' fees, costs, and expenses; and

(j)    Grant all such other relief as the Court deems appropriate.

Dated: March 10, 2026

**KELLER ROHRBACK L.L.P.**

<u>s/ *Ryan McDevitt*</u>
Ryan McDevitt (P84389)
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel:    (206) 623-1900
rmcdevitt@kellerrohrback.com

**WITTELS MCINTURFF PALIKOVIC**
Ethan D. Roman
305 Broadway, 7th Floor
New York, New York 10007
Tel:    (914) 775-8862
edr@wittelslaw.com

**THE LONG LAW FIRM, PLLC**
James Austin Long
120 E. Washington Street, Suite 928
Syracuse, New York 13202
Tel:    (315) 991-8000
jlong@long.law

*Co-Counsel for Plaintiff and the Proposed Class*